UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HILDA L. SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR<br><br>Plaintiff,<br><br>v.<br><br>TIMBER SAVERS, INC., a corporation,<br><br>Defendant. | Case No. 3:10-CV-547-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Motion for a Temporary Restraining Order

pursuant to Section 108(a)(1) of the Federal Mine Safety and Health Act of 1977, 30

U.S.C. §818(a)(1), and Rule 65(b) of the Federal Rules of Civil Procedure (Dkt. 2). The

Court held oral argument on the motion on December 2, 2010.[1] The Court has

_____

[1] Mr. Phil Berreth, President of Timber Savers Inc., entered an improper appearance on behalf of Defendant at the Court's prior hearing on November 18, 2010. Under Idaho law, a non-attorney may not represent a company or other business entity before a judicial body. *See Indian Springs LLC v. Indian Springs Land Inv., LLC.*, 215 P.3d 457, 464-65 (Idaho 2009). Subsequently, Timber Savers obtained counsel in this matter. Dkt. 7.

considered the parties' submissions and oral arguments, and now issues the following

Memorandum Decision and Order.

## BACKGROUND

The Mine Safety and Health Administration (MSHA) of the Department of Labor

seeks to conduct a health and safety inspection of the Rock Solid mine in Weippe, Idaho,

operated by Defendant Timber Savers Inc., under the authority of the Federal Mine Safety

and Health Act of 1977, 30 U.S.C. §§ 801-965. *Compl.* ¶¶ VII-IX. Timber Savers

refuses to allow inspection of the mine, despite attempts by several MSHA

representatives to persuade the company to permit inspection and contest the infractions,

if any, that it might receive as a result of that inspection. *Id.* ¶¶ X, XII. Timber Savers

maintains that the mine does not fall under the Act and that it will not permit inspection of

the mine until it is ordered by the Court to do so. *Drummond Aff.* ¶¶ 6-7.

Plaintiff Hilda L. Solis, Secretary of Labor, United States Department of Labor,

now seeks to compel Timber Savers to grant entry to the Rock Solid mine for health and

safety inspections by MSHA pursuant to the Mine Act.[2]

## LEGAL STANDARD

The United States Supreme Court recently reiterated the standard for a preliminary

---

[2] At oral argument, counsel for the Secretary represented that the only relief now sought is an order granting MSHA entrance to the mine to perform inspection. In her Complaint, the Secretary sought to enjoin Timber Savers from conducting any further mining operations without coming into compliance with the Mine Act and from further violations of the Act. Accordingly, the Court will consider only the Secretary's request to inspect the mine.

injunction in *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008). A plaintiff seeking a preliminary injunction must establish that: 1) it is likely to succeed on the merits; 2) it is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in its favor; and 4) an injunction is in the public interest. A preliminary injunction is "an extraordinary remedy never awarded as of right." *Id.* at 376. In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995).

While generally a party seeking a preliminary injunction must meet the standard requirements for equitable relief, the Ninth Circuit has allowed flexibility when an injunction is sought to prevent the violation of a federal statute and that statute specifically provides for injunctive relief, and has not required a showing of irreparable harm. *See U.S. v. Estate Preservation Services*, 202 F.3d 1093, 1098 (9th Cir. 2000) (citing *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 896 (9th Cir. 1983), *cert. denied*, 464 U.S. 846 (1983)). Here, the Federal Mine Safety and Health Act provides for injunctive relief in exactly these circumstances: when a mine operator refuses to permit inspection of the mine and when he interferes with the carrying out of the provisions of the Mine Act. *See* 30 U.S.C. § 818(a)(1), 818(a)(1)(B)-(D); *Herman v. Commonwealth Edison*, 1998 WL 794335 at *1 (N.D. Ill. September 28, 1998) (finding

that 30 U.S.C. § 818 specifically provides for injunctive relief and applying a relaxed

requirement for the initial showing of irreparable harm where mine owner denied MSHA

access to perform inspection).

Defendant argues that the Mine Act does not specifically provide for injunctive

relief to prevent violations of the Act, and thus, the Secretary must show a likelihood of

suffering irreparable harm before obtaining preliminary relief. Defendant attempts to

distinguish § 818 from the statutes at issue in *Trailer Train Co.* and *Estate Preservation*

*Services* by arguing that the statutes in those cases involved authorization of injunctive

relief for the specific purpose of *preventing* a violation of the statute.[3] In contrast,

Defendant argues, § 818 does not specifically authorize the district court to grant

injunctive relief to prevent violation of the statute.

Section 818 provides:

> [T]he Secretary may institute a civil action for relief,

---

[3] The statute at issue in *Trailer Train Co.*, 49 U.S.C. § 11503, states that "a district court of the United States has jurisdiction . . . to prevent a violation" of the substantive provisions of the statute. 697 F.2d at 869 n.16. The Court looked to the original version of the statute to aid in interpretation, which states: "the district courts of the United States shall have jurisdiction . . . to grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent . . . any acts in violation of this section." *Id*.

The statute at issue in *Estate Preservation Services* states: "A civil action in the name of the United States to enjoin any person from further engaging in specified conduct may be commenced at the request of the Secretary." 26 U.S.C. § 7408(a). The statute also provides: "if the court finds 1) that the person has engaged in any specified conduct and 2) that injunctive relief is appropriate to prevent recurrence of such conduct, the court may enjoin such person from engaging in such conduct . . ." *Id*. § 7408(b).

including a permanent or temporary injunction, restraining order, or any other appropriate order in the district court of the United States . . . whenever such operator or his agent –

A) violates or fails or refuses to comply with any order or decision issued under this chapter . . .,

B) interferes with, hinders, or delays the Secretary or his authorized representative . . . in carrying out the provisions of this chapter . . .,

C) refuses to admit such representatives to the coal or other mine,

D) refuses to permit inspection of the coal or other mine . . .

30 U.S.C. § 818(a)(1)(A)-(D). The plain language of the statute specifically allows the Secretary to seek an injunction in response to violations of the Mine Act, including refusal to allow inspection or hindrance of MSHA duties. The injunction would consist of an order compelling Defendant to cease its violation and thus, in effect, prevents a party from violating the Mine Act. The Court is unpersuaded that there is any technical or real distinction between the provisions of § 818 and the statutes at issue in *Trailer Train Co.* and *Estate Preservation Services*.

Moreover, Defendant's argument would have the effect of requiring that a dangerous condition be present or imminent at the mine before the Secretary can obtain preliminary injunctive relief. Such an interpretation of the statute would be at odds with its remedial purpose and the clear legislative intent to ensure the safety of mine workers.

Therefore, the Court finds that Section 818 does expressly authorize the issuance

of an injunction to prevent violations of the Mine Act and will not require the Secretary to make a showing of irreparable harm before a preliminary injunction will issue. *See Estate Preservation Services*, 202 F.3d at 1098; *Trailer Train Co.,* 697 F.2d at 896.

However, even assuming that a showing of irreparable harm is required, Defendant's refusal to permit inspection – effectively preventing MSHA from enforcing federal safety standards – constitutes an irreparable injury to the Secretary. *See*, *e.g.*, *Solis v. Manalapan Min. Co., Inc.*, 2010 WL 2197534 at *5 (E.D. Ky. May 27, 2010) (finding that the Secretary of Labor and those she seeks to protect suffer irreparable harm without the issuance of preliminary injunctive relief because MSHA must conduct meaningful inspections of the mines to comply with the objectives of the Mine Act); *Dole v. Kutsey*, 731 F.Supp. 708, 710 (E.D. Pa. 1990) ("If an injunction is not issued, the plaintiff cannot secure the health and safety of those who work in and around the defendant's mine. That 'harm' to the plaintiff is 'irreparable' without an injunction); *Marshall v. Kniseley Coal Co.*, 487 F.Supp. 1376, 1377 (C.D. Pa. 1980) ("Interference with enforcement of federal safety standards undoubtedly will result in irreparable harm, and . . . Congress expressly empowered the court to enjoin defendants from refusing to permit federal inspection).

## ANALYSIS

1.      **Likelihood of Success on the Merits**

To grant preliminary relief, the Court considers whether the Secretary has shown a likelihood of success on the merits – that Defendant's refusal to allow inspection violated

the Mine Act. For the reasons discussed below, the Court finds that the Secretary has

shown that Defendant likely violated the Mine Act by refusing to permit inspection.

**A.** *Rock Solid is a Mine Within the Mine Act*

The Act defines a "coal or other mine" as:

> [L]ands, excavations . . . structures, facilities, equipment, machines, tools, or other property . . . on the surface or underground, used in, or to be used in, or resulting from, the work of extracting such minerals from their natural deposits in nonliquid form . . . or used in, or to be used in, the milling of such minerals . . .

30 U.S.C. § 802(h)(1)(c). Congress intended that the definition of a mine under the Mine

Act be given the broadest possible interpretation. *Donovan v. Carolina Stalite Co.*, 734

F.2d 1547, 1554 (D.C. Cir. 1989) (finding that a facility that only heat-processed and

crushed minerals and did not extract minerals or sell final product was a mine within the

Mine Act).

In this case, Rock Solid is a sand and gravel operation. At the site, the MSHA

inspector saw a rock crusher, conveyer belts, a front-end loader, and trucks taking gravel

off-site to customers. *Amos Aff.* ¶¶ 5-6. The scale house operator told the inspector that

the rock crusher would be used that day to crush stone. *Id.* ¶ 5. Sand and gravel

producers are well within the definition of a mine under the Act. *See Carolina Stalite*,

734 F.2d at 1551 (discussing examples of mineral milling and preparation considered to

fall within the Mine Act's jurisdiction, including crushing and sizing); *Magma Copper*

*Co. v. Secretary of Labor*, 645 F.2d 694, 695 (9th Cir. 1981) (finding a complex with a

mine crusher and a mill crusher a mine subject to the Mine Act).   Moreover, Defendant

filed a report with MSHA on July 1, 2009 in which it identified itself as the operator of a

mine in Weippe, Idaho called the Rock Solid mine.  *See Jacobsen Decl.* (November 23,

2010), Ex. E.   For these reasons, the Court finds a likelihood that the Secretary will be

able to establish that Rock Solid falls within the definition of a mine under the provisions

of the Act.

      **B.** *Rock Solid is Properly Regulated Under the Commerce Clause*

      Section 4 of the Federal Mine Safety and Health Act unambiguously evidences

Congress' intent to regulate mines to the full extent of its power under the Commerce

Clause.  *D.A.S. Sand & Gravel, Inc. v. Chao*, 386 F.3d 460, 463 (2d Cir. 2004), *cert.*

*denied*, 544 U.S. 1048 (2005).

      The Commerce Clause grants Congress power to "regulate purely local activities

that are part of an economic 'class of activities' that have a substantial effect on interstate

commerce."  *Gonzales v. Raich*, 545 U.S. 1, 17 (2005) (citing *Wickard v. Filburn*, 317

U.S. 111, 125 (1942)) (finding that Congress properly penalizes noncommercial

cultivation and possession of marijuana for personal medical purposes); *see also D.A.S.,*

386 F.3d at 463-64 (finding that the Supreme Court has "long held" that Congress may

regulate the "activities of an economic actor whose products do not themselves enter

interstate commerce, where the activities of such local actors taken together have the

potential to affect an interstate market . . .").

      Courts have routinely held that mines with entirely local sales effect interstate

commerce and fall within Congress' Commerce power. *See, e.g.*, *D.A.S.*, 386 F.3d at 464 (Commerce Clause grants Congress authority to regulate the sand and gravel company that sold product only intrastate through the Mine Act); *U.S. v. Lake*, 985 F.2d 265, 269 (6th Cir. 1993) (small coal mine with entirely local sales and locally-bought equipment found to effect interstate commerce because small efforts combined with others could influence interstate coal pricing and demand). Thus, any argument by Defendant that its product is sold solely to local customers does not preclude Congress from regulating Defendant's activities as part of Congress's express powers under the Commerce Clause.

The Secretary offers evidence that Defendant's product is taken offsite and delivered to customers. *Amos Aff.* ¶ 6. It is not known how and where Defendant's customers use the product. However, because Defendant sells product to customers, even if entirely to local customers, their product could influence an interstate market that Congress properly regulates. Therefore, the Court concludes that there is a likelihood that the Secretary will be able to establish that the Rock Solid mine is properly regulated by the Mine Act under Congress' Commerce Clause authority.

**C.** *No Warrant is Required for Inspection under the Mine Act*

The warantless inspections required by the Mine Safety and Health Act do not offend the Fourth Amendment. *Donovan v. Dewey*, 452 U.S. 594, 598-99 (1981). Instead, the Act provides a specific mechanism for accommodating any special privacy concerns that a specific mine operator might have. *Id.* at 604. The Act prohibits forcible entries and requires the Secretary, when refused entry into a mining facility, to file a civil

MEMORANDUM DECISION AND ORDER - 9

action in federal court to obtain an injunction. *Id.* This proceeding provides an adequate

forum for the mine owner to show that a specific search is outside the federal regulatory

authority. *Id.* at 604-05.

In this case, no forcible entry was made. When Defendant refused the inspection,

the Secretary filed a civil action to obtain an injunction. Since the Court has afforded

Defendant an adequate forum and finds that Defendant's mine likely falls under the

jurisdiction of Mine Act and is properly inspected, the MSHA may enter and inspect the

Rock Solid mine without first obtaining a warrant.

## 2.     Remaining Requirements

The Court must "balance the competing claims of injury" and consider "the effect

on each party of the granting or withholding of the requested relief." *Winter*, 129 S.Ct. at

376. The injunction must also be in the public interest. *Id.*

The Secretary only seeks an order permitting it to enter and inspect the Rock Solid

mine.  It does not seek to terminate the Defendant's operations. While allowing a federal

inspector onto private property is certainly an inconvenience to Defendant, that

inconvenience is insignificant when compared to the injury to the Secretary, if it is not

permitted to discharge its duty to protect the health and safety of individuals workings at

the Mine.

Finally, the inspection of a mine is in the public interest. Even if there are only a

few employees who work at the mine, the facility could pose a danger to those

employees, surrounding neighbors, or the environment.

**3.    Conclusion**

For the reasons set forth herein, the Court grants the Secretary's Motion for a Temporary Restraining Order and Defendant is ordered to permit MSHA to enter and perform an inspection of the Rock Solid mine within three business days of issuance of this order.

The Court emphasizes that while the Secretary has shown a likelihood of success on the merits, the Court's decision does not conclusively establish that Defendant's mine is subject to the Mine Act and end the case.  Defendant may file an answer to the Complaint, or even a counterclaim seeking declaratory judgment that the operation is not subject to the Mine Act, and fully litigate its concern that the mine is not subject to the Act.

**IT IS ORDERED:**

1.    Plaintiff's Motion for a Temporary Restraining Order (Dkt. 2) is **GRANTED**.  Defendant is ordered to permit inspection of the Rock Solid mine in Weippe, Idaho by the Mine Safety and Health Administration within three (3) business days.  The Order will expire on December 10, 2010.

2.    A hearing on Plaintiff's Motion for a Preliminary or Permanent Injunction, if necessary, will be scheduled for December 10, 2010 pursuant to 30 U.S.C. § 818(b).



DATED:  **December 3, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge